## WOODFORD *vs.* PATTERSON & GRANGER.

In the spring of 1858 A. purchased of the plaintiff a boiler, and gave his note, or promise in writing, to pay the plaintiff therefor, 40,000 feet of lumber, to be delivered on the 1st of September thereafter, on the bank of the Alleghany river, at a place specified. He manufactured certain lumber and put it up, at his mill, a few miles from the river, in four piles. He marked the plaintiff's name on the piles, and informed the plaintiff that the boards were sawed. In October the plaintiff and A. went to the piles, and A. pointed them out as being the lumber of the plaintiff, and told him they were his, and that they were marked to him; that if the plaintiff would draw the boards to the river he, A., would pay him for the drawing. The plaintiff agreed to take the boards where they then were, in payment for the boiler, instead of on the bank of the river, and to draw them himself. *Held*, that the original contract was not within the statute of frauds, and A.'s promise would have been good, had he given no note. That such contract was a special agreement for the payment of a debt in specific articles.

*Held, also,* that the transaction between the parties, in October, amounted to a delivery of the lumber to the plaintiff, in performance of the contract. That the title passed to the plaintiff, and he was entitled to hold the lumber, as against parties claiming the same by a subsequent purchase from A.

APPEAL from a judgment entered on a verdict. Exceptions taken on the trial.

*Henderson & Wentworth,* for the plaintiff.

*D. H. Balls,* for the defendants.

*By the Court,* MARVIN, J. The action was for converting a quantity of pine boards, in Cattaraugus county, manufactured by one James Appleby, from whom the parties respectively claimed title by purchase. The principal question arose thus: Appleby purchased of the plaintiff, in the spring of 1858, a boiler, and gave to him his note or written promise to pay the plaintiff, for the boiler, 40,000 feet of lumber out of the first made at his mill; to be delivered on the 1st of September then following, on the bank of the Alleghany river, at a place specified. He manufactured the lumber in question, and put it up at his mill, a few miles from the river;

in four piles; and the evidence proved, or tended to prove, that he marked the name of the plaintiff on them, and that he informed the plaintiff that the boards were sawed. In October the plaintiff was at the mill, and he and Appleby went to the piles, and Appleby pointed out the piles as the lumber of the plaintiff, and told him that the boards were his, and that they were marked to him. Appleby told the plaintiff if he would draw the boards to the river he would pay him for the drawing. The plaintiff agreed to take the boards where they then were, in payment for the boiler, instead of on the bank of the river, and draw them himself. The defendants claimed title by purchase from Appleby, subsequent to October, when the plaintiff agreed to take the lumber at the mill. The defendants moved for a nonsuit, which was denied, and they excepted. There were exceptions also to the charge of the court; the charge being, in effect, that if the facts were as claimed, from the testimony of the plaintiff's witnesses, or as such testimony tended to prove, then sufficient was done by the parties to vest the title of the lumber in the plaintiff. Did the title of these four piles of lumber vest in the plaintiff? It is supposed that the statute of frauds is controlling, and that enough was not done to transfer the title from Appleby to the plaintiff, and Shindler v. Houston, (1 Comst. 261,) is much relied on. In that case there was a bargain made for certain lumber; no part of the purchase money, amounting to more than $50, was paid; and as stated by Gardiner J., unless the buyer "accepted and received" the whole or a part of the property, the contract was void by the statute of frauds. (2 R. S. 136, § 3.) The statute makes void every contract for the sale of goods &c. for the price of $50 or more, unless a note or memorandum of such contract be made in writing &c.; or unless the buyer shall accept and receive part of such goods &c; or unless the buyer shall at the time pay some part of the purchase money. In Shindler v. Houston, nothing occurred between the parties but mere words, and they constituted a part

of the contract of sale, and it was held that they were not sufficient evidence of a delivery and acceptance; that the statute calls for acts.

The statute undoubtedly requires that there should be a delivery by the vendor, with an intention of vesting the right of possession in the vendee, and there must be an actual acceptance by the latter with the intent of taking possession as owner; and to satisfy this rule, something must be done, subsequent to the sale, unequivocally indicating the mutual intention of the parties.

The words of the statute are "accept and receive," and this language imports some *act done*, aside from the mere verbal contract of sale. I am speaking, of course, of a case where the contract is void unless the buyer shall " accept and receive" part of the goods. Now if the case we are considering is to be controlled by the statute, was there not enough done to satisfy it ? The parties went upon the piles of lumber, and the vendor said in effect to the vendee, " Here is the lumber designed for you—that I agreed you should have— and I have marked it off to you; these four piles are yours." And the vendee in effect says, " I agree to take them; I accept them as they are, marked with my name." Does not all this amount to something more than mere words ? But this is putting the case on grounds quite too narrow. The statute relates to *contracts* for the *sale* of goods, &c. In this case the parties did not negotiate about a *sale* of the lumber, nor do any act in reference to a sale. Appleby had, in April previous, given to the plaintiff his note or contract, by which he promised to pay the plaintiff, for the boiler, a certain quantity of boards out of the first he should make at his mill, and deliver them at a place named. He made the lumber in question intending it for the plaintiff. Had he drawn and delivered the boards in time, at the place named in the contract, the plaintiff would have been bound to accept them in satisfaction of Appleby's undertaking. If he should refuse to receive them, a tender by Appleby would discharge his obligation.

Woodford *v.* Patterson.

The lumber had not been delivered in September, as ageeed, but the plaintiff was still willing, in October, to receive it upon the contract, and was also willing to waive or change that part of the contract relating to the place of delivery, and accept the lumber where it then was. Suppose at that time the plaintiff had delivered to Appleby the note, and the parties had entered into a written agreement, by which the plaintiff had undertaken to draw the lumber to the river, and Appleby had undertaken to pay him therefor, would any one have doubted that the title of the lumber had vested in the plaintiff, and that Appleby had paid his debt? And yet it was not necessary that the note should be surrendered, and a verbal contract for the drawing of the lumber was as valid as though in writing. It seems to me that we are to look elsewhere than to the statute for the law applicable to this case, viz: to the law relating to special contracts for the payment of a debt, in specific articles, and also the law relating to a waiver of strict performance. The statute relates to contracts for the *sale* of goods, &c. for the price of $50 or more, and is applicable to executory contracts. (*Bennett* v. *Hull*, 10 *John.* 364.) In this case the contract was made when the plaintiff sold and delivered the boiler to Appleby, and the latter gave to the plaintiff the written contract to pay in lumber. On the part of the plaintiff the contract was executed by his paying the consideration, and Appleby's promise was evidenced by the note; so that if it should be regarded as a present purchase of the lumber, to be delivered at a future day, the buyer paid the consideration at the time, and in this view the contract between the parties would be valid, if there had been no written promise to pay. In short, the contract by which the plaintiff sold and delivered the boiler to Appleby, the latter promising to pay therefor in lumber, was not within the statute, and Appleby's promise would have been good had he given no note. The question therefore comes back to what was done in October at the mill, and that related to the performance of the agreement made in April, and in

my opinion, by the rules of the common law the evidence was sufficient to show a delivery of the lumber in performance or part performance of the contract, or indeed of a common law sale. (1 *Parsons on Cont.* 435.) If so, the title passed, and the property was at the risk of the plaintiff.

The judgment must be affirmed.

[ERIE GENERAL TERM, November 12, 1860. *Marvin, Davis* and *Grover*, Justices.]